

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EDWARD McCLINTON,
        petitioner,

V.                        CASE NO. 6:04-CV-1574-ORL-22JGG

DON GLADISH, et al.,
        Respondents.          /
_____/


# APPENDIX

_ITEM_                                                          _PAGE(S)_

(a) INFORMATION . . . . . . . . . .   1-2

(b) BOTH ORAL AND WRITTEN INSTRUCTIONS .  3-8

(c) BOOK INSTRUCTIONS . . . . . .  9-10

(d) FLORIDA STATUTES SECTION 790.221.  . 11

(e) MOTION FOR REHEARING . . . . . 12-14

(f) CO-DEFENDANT TRIAL TESTIMONY . . . 15-27

IN THE CIRCUIT COURT OF ORANGE COUNTY, STATE OF FLORIDA

|  |  |
|---|---|
| THE STATE OF FLORIDA | AMENDED<br>INFORMATION # CR98-9050 |
| VS. | DIVISION - 15 |
| EDWARD MCCLINTON | 1. POSSESSION OF A FIREARM BY A<br>CONVICTED FELON (F2-L5) |
|  | 2. POSSESSION OF 20 GRAMS OR LESS<br>OF CANNABIS (Marijuana) (M1) |

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

LAWSON LAMAR, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, OR LAWSON LAMAR, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, by and through the undersigned Designated Assistant State Attorney, under oath, CHARGES that EDWARD MCCLINTON, on the 6th day of January, 1998, in said County and State, did, in violation of Florida Statute 790.23, unlawfully possess a firearm, to-wit:  handgun, EDWARD MCCLINTON having been prior thereto, on the the 7th day of July, 1993, convicted in the Circuit Court of the Ninth Judicial Circuit of Florida of a felony, to-wit: Aggravated Battery (Great Bodily Harm)

FILED IN OPEN COURT
THIS 14 DAY OF April, 1998
Linda W. Chapin, Clerk
BY _____ D.C.

(a) "1"

c.m. 06/29/98

## COUNT TWO

LAWSON LAMAR, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, OR LAWSON LAMAR, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, by and through the undersigned Designated Assistant State Attorney, under oath, CHARGES that EDWARD MCCLINTON, on the 6th day of January, 1998, in said County and State, did, in violation of Florida Statute 893.13(6)(b), unlawfully and knowingly possess twenty (20) grams or less of Cannabis, commonly known as Marijuana, or a mixture containing Cannabis, a substance controlled by Florida Statute 893.03(1)(c)(7).

This information encompasses the transaction and all charges listed on **Complaint Number** CR98-9050 and the bond thereon is hereby superseded. The Orange County Sheriff's Office and the Orange County Corrections Department shall substitute the charge(s) and bond indicated on the information for those on the above cited complaint.

**STATE OF FLORIDA**
**COUNTY OF ORANGE**

Personally appeared before me _DICK K. JUCKNATH_ Assistant State Attorney of the Ninth Judicial Circuit of Florida, who being first duly sworn, says that he/she has received testimony under oath from the material witness or witnesses, which if true, would constitute the offense herein, and that he/she institutes this prosecution in good faith.
The foregoing instrument was acknowledged before me this _16_ day of _April_, 19 _99_ by the aforementioned Assistant State Attorney who is personally known to me and who did take said oath.

_Colleen L. Weiderhold_

COLLEEN L. WEIDERHOLD
Notary Public, State of Florida
My comm. expires Jan. 02, 2000
No. CC552915
ded thru Action Agency

LAWSON LAMAR, State Attorney
Ninth Judicial Circuit of Florida

By _____
Designated Assistant State Attorney

FBN 796875

"2"

Bond $2,500.00

VH/VH 72

1    HIS POCKET AND FINDS A BULLET.  FINDS THIS

2    FIREARM.  IT'S ONE SEAT, ONE SEAT ALL THE WAY

3    ACROSS.  WHY IS THE BULLET IN HIS POCKET?  WHY

4    IS THE GUN NEXT TO HIM?  THESE ARE TWO -- AND

5    THIS IS WHAT THE EVIDENCE SHOWED, TWO CONVICTED

6    FELONS IN A CAR AND THE GUN IS RIGHT NEXT TO

7    ONE OF THEM.  THE OTHER CLAIMS THAT HE HAD THE

8    GUN, CLAIMS IT WAS IN A BROWN PAPER BAG.  IT WAS

9    NEVER TAKEN OUT OF THE BROWN PAPER BAG.  WHERE

10   IS THE BROWN PAPER BAG?  I WOULD SUBMIT TO YOU

11   THAT THERE IS NO BROWN PAPER BAG, THAT THIS WAS

12   FOUND IN THE KNIT CAP.

13       I'M GOING TO ASK YOU TO GO BACK THERE AND

14   TALK IT OVER, AND I BELIEVE THAT WHEN YOU LOOK

15   AT ALL THE EVIDENCE THAT WE DID HAVE, YOU WILL

16   FIND BEYOND A REASONABLE DOUBT THAT

17   MR. MCCLINTON POSSESSED THIS FIREARM.

18   THANK YOU.

19       THE COURT:  MEMBERS OF THE JURY, I THANK

20   YOU FOR YOUR ATTENTION DURING THIS TRIAL.

21   PLEASE PAY CLOSE ATTENTION TO THE INSTRUCTIONS

22   I'M ABOUT TO GIVE.

23       EDWARD MCCLINTON, THE DEFENDANT IN THIS

24   CASE, HAS BEEN ACCUSED OF THE CRIMES OF

25   POSSESSION OF A FIREARM BY A CONVICTED FELON AND

"3"
(b)

1    POSSESSION OF LESS THAN 20 GRAMS OF CANNABIS.

2        BEFORE YOU CAN FIND THE DEFENDANT GUILTY OF

3    POSSESSION OF A FIREARM BY A CONVICTED FELON THE

4    STATE MUST PROVE THE FOLLOWING ELEMENTS:

5        ONE, THAT EDWARD MCCLINTON HAD IN HIS

6    CUSTODY, CARE, POSSESSION OR CONTROL A HANDGUN.

7        TWO, THAT THE HANDGUN WAS ONE THAT WAS, OR

8    COULD READILY BE MADE, OPERABLE.

9        IF YOU FIND THAT THE HANDGUN WAS LAWFULLY

10   OWNED AND POSSESSED UNDER PROVISIONS OF THE

11   FEDERAL LAW, YOU SHALL FIND THE DEFENDANT NOT

12   GUILTY.

13       THIS LAW DOES NOT APPLY TO ANTIQUE FIREARM.

14       CARE AND CUSTODY MEAN IMMEDIATE CHARGE AND

15   CONTROL EXERCISED BY A PERSON OVER THE NAMED

16   OBJECT.  THE TERMS CARE, CUSTODY AND CONTROL MAY

17   BE USED INTERCHANGEABLY.

18       A FIREARM IS ANY WEAPON, INCLUDING A

19   STARTER GUN, WHICH WILL, IS DESIGNED TO, OR MAY

20   READILY BE CONVERTED TO EXPEL A PROJECTILE BY

21   THE ACTION OF A PROJECTILE.

22       OH, I'M SORRY.  I TYPED THIS MYSELF. BY THE

23   ACTION OF AN EXPLOSIVE; THE FRAME OR THE

24   RECEIVER OF ANY SUCH WEAPON; ANY FIREARM MUFFLER   "4"

25   OR FIREARM SILENCER; ANY DESTRUCTIVE DEVICE; OR

97

1        ANY MACHINE GUN.  THE TERM FIREARM DOES NOT

2        INCLUDE ANTIQUE FIREARM UNLESS THE ANTIQUE

3        FIREARM IS USED IN THE COMMISSION OF A CRIME.

4            TO "POSSESS" MEANS TO HAVE PERSONAL CHARGE

5        OF OR EXERCISE THE RIGHT OF OWNERSHIP,

6        MANAGEMENT OR CONTROL OVER THE THING POSSESSED.

7            POSSESSION MAY BE ACTUAL OR CONSTRUCTIVE.

8        IF A THING IS IN THE HAND OF OR ON THE PERSON,

9        OR IN A BAG OR CONTAINER IN THE HAND OF OR ON

10       THE PERSON, OR IS SO CLOSE AS TO BE WITHIN READY

11       REACH AND IS UNDER THE CONTROL OF THE PERSON, IT

12       IS IN THE ACTUAL POSSESSION OF THAT PERSON.

13           IF A THING IS IN A PLACE OVER WHICH THE

14       PERSON HAS CONTROL OR IN WHICH THE PERSON HAS

15       HIDDEN OR CONCEALED IT, IT IS IN THE

16       CONSTRUCTIVE POSSESSION OF THAT PERSON.

17           POSSESSION MAY BE JOINT, THAT IS, TWO OR

18       MORE PERSONS MAY JOINTLY HAVE POSSESSION OF AN

19       ARTICLE, EXERCISING CONTROL OVER IT.  IN THAT

20       CASE, EACH OF THOSE PERSONS IS CONSIDERED TO BE

21       IN POSSESSION OF THAT ARTICLE.

22           IF A PERSON HAS EXCLUSIVE POSSESSION OF A

23       THING, KNOWLEDGE OF ITS PRESENCE MAY BE INFERRED

24       OR ASSUMED.

25           IF A PERSON DOES NOT HAVE EXCLUSIVE

"5"

1    POSSESSION OF A THING, KNOWLEDGE OF ITS PRESENCE

2    MAY NOT BE INFERRED OR ASSUMED.

3        AS TO COUNT 2:  CERTAIN DRUGS AND CHEMICAL

4    SUBSTANCES ARE BY LAW KNOWN AS CONTROLLED

5    SUBSTANCES.  CANNABIS IS A CONTROLLED SUBSTANCE.

6        BEFORE YOU CAN FIND THE DEFENDANT GUILTY OF

7    POSSESSION OF 20 GRAMS OR LESS OF CANNABIS --

8    OOPS -- THE STATE MUST PROVE THE FOLLOWING THREE

9    ELEMENTS BEYOND A RESONABLE DOUBT:

10       ONE, THAT EDWARD MCCLINTON POSSESSED A

11   CERTAIN SUBSTANCE.

12       TWO, THE SUBSTANCE WAS CANNABIS.

13       THREE, THAT EDWARD MCCLINTON HAD KNOWLEDGE

14   OF THE PRESENCE OF THE SUBSTANCE.

15       THE DEFINITION OF "TO POSSESS" AND ACTUAL

16   AND CONSTRUCTIVE POSSESSION, JOINT POSSESSION,

17   ALL OF THOSE THINGS ARE DEFINED AGAIN HERE, SO I

18   WON'T READ THEM AGAIN.  YOU ARE GOING TO GET A

19   COPY OF THIS, ANYWAY, SO I DON'T THINK YOU WANT

20   TO HEAR IT AGAIN.  DO YOU?  NO.

21       THE DEFENDANT HAS ENTERED A PLEA OF NOT

22   GUILTY.  THIS MEANS YOU MUST PRESUME OR BELIEVE

23   THE DEFENDANT IS INNOCENT.  THE PRESUMPTION

24   STAYS WITH THE DEFENDANT AS TO EACH MATERIAL

25   ALLEGATION IN THE INFORMATION THROUGH EACH STAGE

"b"

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

STATE OF FLORIDA,

      Plaintiff,

v.                                   CASE NO. CR98-9050

EDWARD MCCLINTON,

      Defendant.

_____/

THIS 8 _____ NOV _____ 99

BY _____ D.C.

## JURY INSTRUCTIONS

## 2.01  INTRODUCTION TO FINAL INSTRUCTIONS

      Members of the jury, I thank you for your attention during this trial. Please pay attention to the instructions I am about to give you.

## 2.02  STATEMENT OF CHARGE

Edward McClinton, the defendant in this case, has been accused of the crimes of Possession of a Firearm by a Convicted Felon and Possession of less than 20 grams of Cannabis.

COUNT I

## POSSESSION OF FORBIDDEN FIREARMS
## F.S. 790.23

Before you can find the defendant guilty of Possession of a Firearm by a Convicted Felon the State must prove the following elements beyond a reasonable doubt:

1.    Edward McClinton had in his care, custody, possession or control a handgun.

2.    The handgun was one that was, or could readily be made, operable.

110

If you find that the handgun was lawfully owned and possessed under provisions of the federal law, you shall find the defendant not guilty.

This law does not apply to antique firearms.

"Care" and "custody" mean immediate charge and control exercised by a person over the named object.  The terms care, custody and control may be used interchangeably.

A "firearm" is any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun.  The term "firearm does not include an antique firearm unless the antique firearm is used in the commission of a crime.

To "possess" means to have personal charge of or exercise the right of ownership, management or control over the thing possessed.

Possession may be actual or constructive.  If a thing is in the hand of or on the person, or in a bag or container in the hand of or on the person, or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person.

If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of that person.

Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it.  In that case, each of those persons is considered to be in possession of that article.

If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.

If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

COUNT II

## DRUG ABUSE - POSSESSION
### F.S. 893.13(1)(f)

Certain drugs and chemical substances are by law known as "controlled substances." Cannabis is a controlled substance.

Before you can find the defendant guilty of Possession of 20 grams or less of cannabils, the State

"8"

iii

**CRIMINAL CASES** 1312

2. He did so
[[at] [within] [into] a public or private building, occupied or unoccupied.]
[[at] [within] [into] a public or private bus.]
[[at] [within] [into] a train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car or vehicle of any kind that was being used or occupied by any person.]
[[at] [within] [into] a boat, vessel, ship or barge lying in or plying the waters of this state.]
[[at] [within] [into] an aircraft flying through the air space of this state.]

3. The act was done wantonly or maliciously.

**Definitions**   "Wantonly" means consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person.

"Maliciously" means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person.

**Give if applicable**   A "firearm" is legally defined as *(adapt from F.S. 790.001 as required by allegations)*.

**Possession of Forbidden Firearms F.S. 790.221**

Before you can find the defendant guilty of *(crime charged)*, the State must prove the following two elements beyond a reasonable doubt:

**Elements**
1. *(Defendant)* [owned] [had in his care, custody, possession or control] a *(firearm alleged)*.
2. The *(firearm alleged)* was one that was, or could readily be made, operable.

**Defenses**   If you find that the *(firearm alleged)* was lawfully owned and possessed under provisions of the federal law, you shall find the defendant not guilty.

This law does not apply to antique firearms.

**Definitions; give as applicable**   "Care" and "custody" mean immediate charge and control exercised by a person over the named object. The terms care, custody and control may be used interchangeably.

A ["short-barreled rifle"] ["short-barreled shotgun"] ["machine gun"] is legally defined as *(adapt from F.S. 790.001(9), (10) or (11) as required by the allegations)*.

An "antique firearm" is legally defined as *(adapt from F.S. 790.001(1) as required by the allegations)*.

To "Possess" means to have personal charge of or exercise the right of ownership, management or control over the thing possessed.

Possession may be actual or constructive. If a thing is in the hand of or on the person, or in a bag or container in the hand of or on the person, or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person.

If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of that person.

Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. In that case, each of those persons is considered to be in possession of that article.

(c) "9"

If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.

If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

**Felons Possessing Weapons F.S. 790.23**

Before you can find the defendant guilty of *(crime charged)*, the State must prove the following two elements beyond a reasonable doubt:

Elements
1. *(Defendant)* had been convicted of *(prior offense)*.
2. After the conviction *(defendant)* knowingly

Give 2a or 2b as applicable
   a.   [owned] [had in [his] [her] care, custody, possession or control]

        [a firearm.]
        [an electric weapon or device.]
   b.   [carried a *(weapon alleged)*, which was concealed from the ordinary sight of another person.]

Defense
If you find that the defendant's civil rights had been restored at the time of the offense, you shall find the defendant not guilty.

Definitions
"Convicted" means that a judgment has been entered in a criminal proceeding by a competent court pronouncing the accused guilty.

A ["firearm"] ["electric weapon or device"] ["concealed weapon"] is legally defined as *(adapt from F.S. 790.001 as required by the allegations)*.

Give if 2a alleged
"Care" and "custody" mean immediate charge and control exercised by a person over the named object. The terms care, custody and control may be used interchangeably.

To "possess" means to have personal charge of or exercise the right of ownership, management or control over the thing possessed.

Possession may be actual or constructive. If a thing is in the hand of or on the person, or in a bag or container in the hand of or on the person, or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person.

If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of that person.

Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. In that case, each of those persons is considered to be in possession of that article.

If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.

If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

**SEX OFFENSES**

**Sexual Battery—Victim less than Twelve Years of Age—F.S. 794.011(2)**

Before you can find the defendant guilty of Sexual Battery upon a Person Less Than Twelve Years of Age, the State must prove the following two elements beyond a reasonable doubt:

Elements
1. *(Victim)* was less than twelve years of age.
2.  a.  [*(Defendant)* committed an act [upon] [with] *(victim)* in which the sexual organ of the [*(defendant)*] [*(victim)*] penetrated or had union with the [anus] [vagina] [mouth] of the [*(victim)*] [*(defendant)*]].
   b.  [*(Defendant)* committed an act upon *(victim)* in which the [anus] [vagina] of *(victim)* was penetrated by an object.]
   c.  [*(Defendant)* injured the sexual organ of *(victim)* in an attempt to commit an act [upon] [with] *(victim)* in which the sexual organ of the [*(defendant)*] [*(victim)*] would have penetrated or would have had union with the [anus] [vagina] [mouth] of the [*(victim)*] [*(defendant)*].]

(a) For a first offense, the minor serve a mandatory period of detention of 5 days in a secure detention facility and perform 100 hours of community service.

(b) For a second or subsequent offense, that the minor serve a mandatory period of detention of 10 days in a secure detention facility and perform no less than 100 nor more than 250 hours of community service.

The minor shall receive credit for time served before adjudication.

(10) If a minor is found to have committed an offense under subsection (9), the court shall impose the following penalties in addition to any penalty imposed under paragraph (9)(a) or paragraph (9)(b):

(a) For a first offense:

1. If the minor is eligible by reason of age for a driver license or driving privilege, the court shall direct the Department of Highway Safety and Motor Vehicles to revoke or to withhold issuance of the minor's driver license or driving privilege for up to 1 year.

2. If the minor's driver license or driving privilege is under suspension or revocation for any reason, the court shall direct the Department of Highway Safety and Motor Vehicles to extend the period of suspension or revocation by an additional period for up to 1 year.

3. If the minor is ineligible for a driver license or driving privilege, the court shall direct the Department of Highway Safety and Motor Vehicles to withhold issuance of the minor's driver license or driving privilege for up to 1 year after the date on which the minor would otherwise have become eligible.

(b) For a second or subsequent offense:

1. If the minor is eligible by reason of age for a driver license or driving privilege, the court shall direct the Department of Highway Safety and Motor Vehicles to revoke or to withhold issuance of the minor's driver license or driving privilege for up to 2 years.

2. If the minor's driver license or driving privilege is under suspension or revocation for any reason, the court shall direct the Department of Highway Safety and Motor Vehicles to extend the period of suspension or revocation by an additional period for up to 2 years.

3. If the minor is ineligible for a driver license or driving privilege, the court shall direct the Department of Highway Safety and Motor Vehicles to withhold issuance of the minor's driver license or driving privilege for up to 2 years after the date on which the minor would otherwise have become eligible.

**History.**—ss. 1, 2, ch. 26946, 1951; s. 8, ch. 69-306; s. 754, ch. 71-136; s. 2, ch. 78-183; s. 199, ch. 93-416; s. 23, ch. 97-238.
**Note.**—Transferred to s. 985.231 by s. 21, ch. 97-238.
**Note.**—Former s. 985.2 by s. 1, ch. 96-398, and the Department of Health and Rehabilitative Services was redesignated as the Department of Children and Family Services by s. 5, ch. 96-403.

**790.221 Possession of short-barreled rifle, short-barreled shotgun, or machine gun.—**

(1) It is unlawful for any person to own or to have in his or her care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun which is, or may readily be made, operable; but this section shall not apply to antique firearms.

(2) A person who violates this section commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(3) Firearms in their original military configuration as issued to members of the Armed Forces of the United States by the federal Government are exempt from the provisions of this section.

**History.**—s. 10, ch. 69-306; s. 1, ch. 89-312; s. 21, ch. 93-406; s. 1217, ch. 97-102.

**790.225 Self-propelled knives; unlawful to manufacture, sell, or possess; forfeiture; penalty.—**

(1) It is unlawful for any person to manufacture, display, sell, own, possess, or use a self-propelled knife which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material, or compressed gas. A self-propelled knife is declared to be a dangerous or deadly weapon and a contraband item. It shall be subject to seizure and shall be disposed of as provided in s. 790.08(1) and (6).

(2) This section shall not apply to any device which propels an arrow, a bolt, or a dart by means of any common bow, compound bow, crossbow, or underwater spear gun.

(3) Any person violating the provisions of subsection (1) is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

**History.**—s. 2, ch. 85-258; s. 178, ch. 91-224.

**790.23 Felons and delinquents; possession of firearms or electric weapons or devices unlawful.—**

(1) It is unlawful for any person to own or to have in his or her care, custody, possession, or control any firearm or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:

(a) Convicted of a felony or found to have committed a delinquent act that would be a felony if committed by an adult in the courts of this state;

(b) Convicted of or found to have committed a crime against the United States which is designated as a felony;

(c) Found to have committed a delinquent act in another state, territory, or country that would be a felony if committed by an adult and which was punishable by imprisonment for a term exceeding 1 year; or

(d) Found guilty of an offense that is a felony in another state, territory, or country and which was punishable by imprisonment for a term exceeding 1 year.

(2) This section shall not apply to a person convicted of a felony whose civil rights and firearm authority have been restored, or to a person found to have committed a delinquent act that would be a felony if committed by an adult with respect to which the jurisdiction of the court pursuant to chapter 39 has expired.

(3) Any person who violates this section commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**790.235 Possession of firearm by violent career criminal unlawful; penalty.—**

(1) Any person who meets the violent career criminal criteria under s. 775.084(1)(c), regardless of whether such person is or has previously been

---

(2) A person who violates this section commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(9) Firearms in their original military configuration as issued to members of the Armed Forces of the United States by the federal Government are exempted.

**790.24 Report of medical treatment of gunshot wounds; penalty for failure to report.—**Any physician, nurse, or employee thereof and any employee of a hospital, sanitarium, clinic, or nursing home knowingly treating any person suffering from a gunshot wound or other wound indicating violence, or receiving a request for such treatment, shall report the same immediately to the sheriff's department of the county in which treatment is administered or request therefor received. Any such person willfully failing to report such treatment or request therefor is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

**History.**—s. 1, ch. 95-182; s. 755, ch. 71-136.

**790.25 Lawful ownership, possession, and use of firearms and other weapons.—**

(1) DECLARATION OF POLICY.—The Legislature finds as a matter of public policy and fact that it is necessary to promote firearms safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property, and the use by United States or state military organizations, and as otherwise now authorized by law, including the right to use and own firearms for target practice and marksmanship on target practice ranges or other lawful places, and lawful hunting and other lawful purposes.

(2) USES NOT AUTHORIZED.—

(a) This section does not authorize carrying a concealed weapon without a permit, as prohibited by ss. 790.01 and 790.02.

(b) The protections of this section do not apply to the following:

PROVIDED TO MARION
CORRECTIONAL INSTITUTION
ON _m.E-03_
FOR MAILING.

**IN THE CIRCUIT COURT OF THE _NINTH_**
**JUDICIAL  CIRCUIT,  IN  AND  FOR**
**_ORANGE_  COUNTY, FLORIDA**

STATE OF FLORIDA,
Plaintiff,

vs.                                    Case Number: _98-CF-9050-0_

_Edward M. Clinton_,
Defendant.

_____/

## MOTION FOR REHEARING

Pro se Defendant, _Edward M. Clinton_, pursuant to Fla.R.Cr.P

3.850 (g), herein moves the court to grant rehearing, and as grounds therefore

submits:

defendant Would file this Motion for REHEARING
to Point out to this Court that the Challenge to
the Sufficiency of the evidence is to be articuleted
In A motion for Judgement of acquittal And not in
Opening Statement as allege by this Court, therefor
Cousel WAS Ineffective In Preserving this issue for
appellete, review see 680 so2d At 598 however in the

(e)          "12"

Instant Case Knowledge is A essential element of Possession of A firearm By Convicted felon, see Adkin v. State 738 so2d 961 Where there is Jountly Possession the State must establish by Independeat Proof defendant hAd Knowledge of the Present of the firearm Allege, See Jacobs v. State 742 so2d 333 in the Instant Case the state never established this Proof nor does the record Attach established Proof therefore It Is A fundemental error to Convict the defendant of Crime he never Commetted Such A error may be raise At Anytime see Brown v. State 652 so2d 877 defendant would Ask this Honorable Court to Please reConsider graund two of the Above-Style Motion And grunt the Some Issue raised.

2

WHEREFORE, Defendant moves the court for issuance of an order granting the relief herein sought. *

Defendant declares under penalty of perjury (§ 92.525(2), Fla. Stat.) that he has read this motion and that the facts stated in it are correct and true.

Respectfully submitted,

/S/ _____

print name & DC #: ... _Edward McClintock_ # _326905_

Marion Correctional Institution

Post Office Box _____

Lowell, Florida 32663-_____

---

\* *If Plaintiff was involved in this matter (the court issued an order to show cause), a certificate of service is needed.*

"14"

1                     —     —     —

2                    DIRECT EXAMINATION

3   BY MR. IRWIN:

4       Q.   WOULD YOU STATE YOUR NAME, PLEASE, SIR?

5       A.   BERNARD ALLAN JACKSON.

6       Q.   MR. JACKSON, DO YOU RECALL BEING IN A CAR WITH

7   MR. MCCLINTON ON JANUARY 6 OF 1998 IN THE AREA OF THE

8   EXECUTIVE MOTEL IN ORANGE COUNTY?

9       A.   YES.

10      Q.   OKAY.  YOU NEED TO SPEAK UP A LITTLE BIT INTO

11  THE MICROPHONE.  DO YOU RECALL BEING APPROACHED BY SOME

12  POLICE OFFICERS ON THAT DATE?

13      A.   YES.

14      Q.   OKAY.  AND AT THAT TIME DID THE POLICE

15  OFFICERS REMOVE YOU FROM THE VEHICLE?

16      A.   DID THEY REMOVE ME FROM THE VEHICLE?

17      Q.   YES.

18      A.   THEY ASKED ME TO GET OUT OF THE CAR.

19      Q.   OKAY.  AND DID THEY SEARCH YOU?

20      A.   YES.

21      Q.   DO YOU RECALL THEM FINDING A HANDGUN ON THE

22  INSIDE OF THAT VEHICLE?

23      A.   YES.

24      Q.   DO YOU RECALL WHERE THAT HANDGUN WAS?

25      A.   IN BETWEEN THE SEAT WHERE ME AND MR. MCCLINTON

60

1    WAS SITTING AT.

2        Q.   OKAY.  WAS IT WRAPPED UP INSIDE ANYTHING?

3        A.   A HAT WAS OVER THE TOP OF THE GUN.

4        Q.   OKAY.  HOW DID THAT FIREARM GET INSIDE THE

5    CAR?

6        A.   I PUT IT THERE.

7        Q.   OKAY.  AND DID MR. MCCLINTON KNOW OF THAT

8    FIREARM?  WAS HE AWARE IT WAS THERE?

9        A.   NOT AT THE TIME.

10            MR. BERGER:  OBJECTION.  THIS CALLS FOR

11       SPECULATION.

12            THE COURT:  SUSTAINED.

13   BY MR. IRWIN:

14       Q.   DID YOU SHOW MR. MCCLINTON THAT GUN AND SAY,

15   HERE'S A FIREARM, I'M PLACING IT IN THIS CAR?

16       A.   NOT AT THE TIME.

17       Q.   DID YOU EVER HAVE ANY CONVERSATION WITH HIM

18   ABOUT THE FIREARM, LETTING HIM KNOW THAT IT WAS THERE IN

19   THE CAR?

20       A.   NO.

21       Q.   DID HE EVER SAY ANYTHING TO YOU INDICATING

22   THAT HE SAW THE FIREARM OR KNEW THAT IT WAS THERE?

23       A.   NO.

24       Q.   OKAY.  AND HAVE YOU BEEN CONVICTED OF A FELONY

25   BEFORE?

61

1      A.   YES.

2      Q.'  DO YOU KNOW HOW MANY TIMES?

3      A.   SEVERAL TIMES, I THINK.

4           THE COURT:  HOW MANY?

5           THE WITNESS:  I DON'T KNOW HOW MANY, BUT

6      SEVERAL.

7           THE COURT:  YOU DIDN'T SAY SEVEN, YOU SAID

8      SEVERAL?

9           THE WITNESS:  YES.

10          MR. IRWIN:  I DON'T HAVE ANY OTHER

11     QUESTIONS.

12          THE COURT:  CROSS.

13                   -      -      -

14                CROSS EXAMINATION

15     BY MR. BERGER:

16     Q.   GOOD AFTERNOON.

17     A.   HOW YOU DOING?

18     Q.   MR. JACKSON, YOU ARE FRIENDS WITH

19     MR. MCCLINTON; IS THAT RIGHT?

20     A.   YES.

21     Q.   YOU'VE GROWN UP TOGETHER?

22     A.   YES.

23     Q.   SPENT MANY YEARS WITH HIM?

24     A.   YES.

25     Q.   YOU HANG OUT TOGETHER?

62

1        A.    SOMETIMES.   NOT ALL THE TIME.

2        Q.    ON JANUARY 6 OF 1998, YOU WERE WITH

3   MR. MCCLINTON, RIGHT?

4        A.    YES.

5        Q.    OKAY.   AND HAVE YOU TALKED ABOUT THIS CASE

6   THAT WE'RE HERE ON TODAY WITH MR. MCCLINTON?

7        A.    NOT REALLY.

8        Q.    OKAY.   HOW DID YOU KNOW TO COME TO COURT

9   TODAY?

10       A.    I SAW HIM AND HE TOLD ME.

11       Q.    SORRY?

12       A.    HE TOLD ME WHEN I SEEN HIM.

13       Q.    MR. MCCLINTON TOLD YOU TO COME TO COURT TODAY?

14       A.    YEAH.   HE SAID YOU HAVE TO COME TO COURT AND

15  THAT HE NEED ME TO COME TO COURT WITH HIM.   HE NEEDED TO

16  COME TO COURT.

17       Q.    YOUR TESTIMONY IS YOU GUYS DID NOT DISCUSS

18  THIS CASE?

19       A.    I DIDN'T, NO.

20       Q.    OKAY.   THIS CASE OCCURRED ON

21  JANUARY 6 OF 1998; IS THAT RIGHT?

22       A.    I THINK THAT'S THE EXACT DATE.   I AIN'T FOR

23  SURE.

24       Q.    AND YOU DIDN'T CLAIM THAT THE FIREARM WAS

25  YOURS JANUARY 6TH, 1998, RIGHT?

" 18 "

63

1      A.   IT WASN'T MINE AT THE TIME.   I JUST FOUND IT.

2  IT WASN'T MINE.

3      Q.   BUT YOU DIDN'T TELL LAW ENFORCEMENT OFFICERS,

4  I FOUND THE FIREARM BACK IN JANUARY OF '98?

5      A.   HUH?

6      Q.   YOU DIDN'T SAY TO THE COPS, I FOUND THIS

7  FIREARM, LET MR. MCCLINTON GO ON THE FIREARM CHARGE?

8  YOU DIDN'T DO THAT, DID YOU?

9      A.   THEY DIDN'T ASK ME THAT.

10     Q.   BUT YOU DIDN'T COME FORWARD AND TELL THEM,

11 THOUGH, DID YOU?

12     A.   NO, I DIDN'T.

13     Q.   HOW ABOUT FEBRUARY OF '98, YOU DIDN'T COME

14 FORWARD THEN, EITHER?

15     A.   NO.

16     Q.   HOW ABOUT MARCH OF '98?

17     A.   MARCH OF '98?

18     Q.   YOU DIDN'T COME FORWARD THEN?   HOW ABOUT

19 JANUARY, NEW YEAR'S, 1999, DID YOU COME FORWARD TO A LAW

20 ENFORCEMENT OFFICER AND SAY, MR. MCCLINTON IS BEING

21 WRONGFULLY CHARGED, I HAD THE GUN?   YOU DIDN'T COME

22 FORWARD THEN?

23     A.   NO.

24     Q.   IN FACT, YOU DIDN'T COME FORWARD AND CLAIM

25 THAT YOU'RE THE ONE THAT FOUND THE GUN UNTIL ABOUT A

1    YEAR AND NINE MONTHS AFTER THIS INCIDENT OCCURS; ISN'T

2    THAT RIGHT?

3         A.   NOBODY ASKED ME -- ASKED ME WHERE THE GUN COME

4    FROM.

5         Q.   YOU DIDN'T COME FORWARD AND TELL THEM, DID

6    YOU?

7         A.   NO.

8         Q.   OKAY.  AND THE FIRST TIME YOU CAME FORWARD WAS

9    AT THE DEPOSITION, RIGHT, BACK IN OCTOBER OF THIS YEAR?

10        A.   I THINK THAT'S -- YEAH.

11        Q.   OKAY.  WHEN YOU APPROACHED -- WHEN THE

12   OFFICERS APPROACHED YOU ALL, WERE THE WINDOWS OF THE

13   VEHICLE UP OR DOWN?

14        A.   UP.

15        Q.   THEY WERE ROLLED ALL THE WAY UP?

16        A.   (NODS HEAD).

17        Q.   OKAY.  LET'S TALK ABOUT YOUR STATE PRIOR TO

18   JANUARY 6TH.  YOU WERE SMOKING CRACK FOUR DAYS PRIOR TO

19   THAT?

20        A.   YES.

21        Q.   AND YOU WERE SMOKING MARIJUANA THAT NIGHT?

22        A.   I DON'T SMOKE MARIJUANA.

23        Q.   YOU WERE NOT SMOKING MARIJUANA?

24        A.   (SHAKES HEAD).

25        Q.   WELL, SIR, YOU TOOK A DEPOSITION ON

"20"

65

1    OCTOBER 13 OF 1999 AT THIS COURTHOUSE; IS THAT RIGHT?

2       A.   YES, SIR.

3       Q.   MR. IRWIN WAS THERE; I WAS THERE?

4       A.   YES, SIR.

5       Q.   YOU SWORE TO TELL THE TRUTH?

6       A.   YES, I DID.

7       Q.   YOU WERE UNDER OATH?

8       A.   YES, SIR.

9       Q.   I'M GOING TO GIVE YOU A CHANCE TO LOOK AT YOUR

10   DEPOSITION.

11            MR. BERGER:  DIRECTING COUNSEL TO PAGE 6,

12       LINES 22 AND 23.  IF I COULD APPROACH THE

13       WITNESS, YOUR HONOR?

14            THE COURT:  YES.

15   BY MR. BERGER:

16       Q.   LINES 22 AND 23.  OKAY.  DO YOU RECALL

17   MR. IRWIN ASKING YOU THE FOLLOWING QUESTION AND YOU GAVE

18   THE FOLLOWING ANSWER:  "HAD YOU GUYS BEEN SMOKING

19   MARIJUANA?  ANSWER:  WE'D BEEN SMOKING MARIJUANA."  IS

20   THAT CORRECT?

21       A.   YEAH, I REMEMBER THAT.

22       Q.   OKAY.  AND YOUR TESTIMONY IS THAT PRIOR TO THE

23   6TH, YOU WENT ON SOME KIND OF BINGE WHERE YOU WERE

24   SMOKING POT, SMOKING CRACK FOR FOUR DAYS STRAIGHT; IS

25   THAT RIGHT?

"21"

66

1        A.   YES, SIR.

2        Q.   OKAY.  AND THAT NIGHT YOU WERE SMOKING

3    MARIJUANA?

4        A.   I HAD A LITTLE.  I DIDN'T SMOKE THAT MUCH.

5        Q.   WHAT'S THAT?

6        A.   I HAD A LITTLE.  I DIDN'T SMOKE THAT MUCH.

7        Q.   OKAY.  AND YOU WOULD AGREE WITH ME THAT CRACK

8    WOULD AFFECT YOUR MEMORY IN THIS CASE?

9        A.   (NODS HEAD).

10       Q.   IS THAT CORRECT?

11       A.   YES, SIR.

12       Q.   OKAY.  SIR, HAVE YOU EVER -- YOU WERE ASKED BY

13   MR. IRWIN ABOUT BEING CONVICTED OF FELONIES, AND I

14   BELIEVE YOUR ANSWER WAS YOU DON'T RECALL; IS THAT

15   CORRECT?

16       A.   YEAH.

17       Q.   IF I GIVE YOU THE OPPORTUNITY TO LOOK THROUGH

18   YOUR RECORD, WOULD YOU BE ABLE TO REMEMBER?

19       A.   I DON'T KNOW ABOUT THAT.

20       Q.   OKAY.  I'M GOING --

21            MR. BERGER:  I WOULD ASK I BE ALLOWED TO

22   APPROACH THE WITNESS, IF I COULD, YOUR HONOR.

23            THE COURT:  OKAY.  YES.

24            MR. BERGER:  JUDGE, COULD WE APPROACH REAL

25   BRIEF?

"22"

67

1          THE COURT:  YES.

2                    -      -      -

3          (THE FOLLOWING PROCEEDINGS WERE HAD AT THE

4     BENCH.)

5          MR. BERGER:  I'M NOT SURE HE'S GOING TO BE

6     ABLE TO UNDERSTAND HOW TO DO THIS.  I DON'T MIND

7     FLIPPING THROUGH IT FOR HIM.  IF HE IS GOING TO

8     DENY IT, OR WHATEVER, I'LL ENTER IT INTO

9     EVIDENCE.  BUT IF WE CAN SOMEHOW SHOW HOW MANY

10    PRIOR CONVICTIONS HE HAS.

11         THE COURT:  DO YOU KNOW HOW MANY?

12         MR. BERGER:  I HAVE TEN FELONIES AND TWO

13    CRIMES OF DISHONESTY, MISDEMEANORS.  THE WAY I

14    WOULD LIKE TO DO IT, IF WE COULD EXCUSE THE JURY

15    REAL QUICK, SHOW HIM AND LET HIM TESTIFY TO AT

16    LEAST TEN.

17         THE COURT:  OKAY.

18         MR. IRWIN:  I DON'T CARE WHAT YOU DO WITH

19    THIS WITNESS.

20         THE COURT:  OKAY.  WELL, WHY DON'T YOU JUST

21    ASK HIM, IT'S A POSSIBILITY TEN FELONIES AND TWO

22    OF THE OTHERS, AND IF HE DENIES IT, I'LL SEND

23    THEM OUT AND YOU CAN SHOW IT TO HIM AND THEN

24    WE'LL GET THEM BACK IN HERE.  IS THAT OKAY?

25         MR. BERGER:  I'LL ASK IF HE HAS AT LEAST

"23"

68

1    TEN FELONY CONVICTIONS AND TWO CRIMES --

2         THE COURT:  OF DISHONESTY.

3         MR. IRWIN:  I DOUBT HE REMEMBERS.

4         THE COURT:  WE MAY HAVE TO GO THE HARD WAY.

5              -       -       -

6         (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

7    COURT.)

8    BY MR. BERGER:

9         Q.   MR. JACKSON, WOULD YOU AGREE WITH ME THAT YOU

10   HAVE AT LEAST TEN PRIOR FELONY CONVICTIONS?

11        A.   AROUND THAT.  ABOUT THAT MANY, YES, SIR.

12        Q.   OKAY.  AS FAR AS WHAT WE TERMED "CRIMES OF

13   DISHONESTY", WOULD YOU AGREE THAT YOU HAVE AT LEAST TWO

14   PRIOR CRIMES OF DISHONESTY?

15        A.   I DON'T EVEN KNOW WHAT THAT IS.  WHAT KIND OF

16   CRIME IS THAT?  BY DISHONESTY, WHAT YOU MEAN?

17        THE COURT:  LET ME SEE WHAT YOU'VE GOT TO

18   SHOW THOSE.

19        MR. BERGER:  THANKS, JUDGE.

20        THE COURT:  OKAY.

21             -       -       -

22        (THE FOLLOWING PROCEEDINGS WERE HAD AT THE

23   BENCH.)

24        THE COURT:  OKAY.  SHOW HIM THOSE AND TELL

25   HIM THAT THOSE ARE CRIMES OF DISHONESTY.

JEAN M. DEXTER, RPR-CRR
OFFICIAL COURT REPORTER

"24"

69

1                   —       —       —

2           (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

3       COURT.)

4           MR. BERGER:  IF I COULD APPROACH THE

5       WITNESS?

6           THE COURT:  YES.

7   BY MR. BERGER:

8       Q.   JUST LOOK AT THESE TWO AND I WILL TELL YOU

9   THEY ARE CRIMES OF DISHONESTY, AND I'M GOING TO ASK THE

10  QUESTION AGAIN, OKAY, ON THESE TWO.  DON'T SAY WHAT IT

11  IS.

12      A.   OKAY.

13      Q.   WOULD YOU AGREE WITH ME THAT YOU'VE BEEN

14  CONVICTED OF AT LEAST TWO CRIMES OF DISHONESTY?

15      A.   YES.

16      Q.   OKAY.  YOUR TESTIMONY IS THAT YOU FOUND THE

17  GUN; IS THAT CORRECT?

18      A.   YES, SIR.

19      Q.   AND THEN YOU PUT IT IN THE CAR, CORRECT?

20      A.   YES, SIR.

21      Q.   AND YOU NEVER SAW A BULLET?

22      A.   NO, I NEVER SAW NO BULLET.

23      Q.   NEVER HAD A BULLET IN YOUR HAND?

24      A.   NO, SIR.

25      Q.   NEVER HAD A BULLET IN YOUR POCKET?

"25"

70

1      A.   NO, SIR.

2      Q.   NEVER HAD A BULLET ON YOUR PERSON?

3      A.   NO, SIR.

4      Q.   DON'T KNOW WHAT TYPE OF GUN IT IS?

5      A.   NO, SIR.

6      Q.   NEVER LOOKED AT THE SERIAL NUMBER ON THE GUN?

7      A.   NO, SIR.

8      Q.   DON'T KNOW IF IT'S AN AUTOMATIC OR A

9   SEMIAUTOMATIC?

10     A.   NO, SIR.

11     Q.   DON'T KNOW IF IT'S A PISTOL?

12     A.   ALL I KNOW IS IT HOW IT FEELS.

13          THE COURT:  SAY THAT AGAIN.

14          THE WITNESS:  JUST BY THE FEEL OF IT, YOU

15     KNOW?

16          THE COURT:  BY THE FEEL OF IT?

17          THE WITNESS:  YEAH, WHEN IT WAS IN THE BAG.

18          THE COURT:  IT WAS IN A BAG?

19          THE WITNESS:  YEAH.

20   BY MR. BERGER:

21     Q.   SO YOU'RE TELLING THIS JURY THAT THE GUN WAS

22   IN A PAPER BAG?

23     A.   YES, SIR.

24     Q.   A CRUMPLED UP PAPER BAG?

25     A.   HUH?

"26"

JEAN M. DEXTER, RPR-CRR
OFFICIAL COURT REPORTER

71

1      Q.   A CRUMPLED UP PAPER BAG?

2      A.   YEAH.

3      Q.   YOU FELT IT THROUGH THE BAG?

4      A.   IT WAS ROLLED UP IN THE BAG.

5      Q.   OKAY.  NEVER TOOK IT OUT OF THE BAG?

6      A.   NO.

7      Q.   AND YET, AT THIS POINT IN TIME, BACK ON

8   JANUARY 6 OF '98, YOU WERE A CONVICTED FELON AT THAT

9   POINT IN TIME?

10     A.   PRETTY MUCH, YES, SIR.  PRETTY MUCH, YES, SIR.

11     Q.   AND YOU NEVER SAW ANY OF THE BULLETS?

12     A.   NO, SIR.

13          MR. BERGER:  I WOULD TENDER THE WITNESS,

14   YOUR HONOR.

15          MR. IRWIN:  NOTHING FURTHER.

16          THE COURT:  CAN WE RELEASE THIS WITNESS?

17          MR. IRWIN:  YES, MA'AM.

18          THE COURT:  STATE OKAY WITH THAT?

19          MR. BERGER:  YES, YOUR HONOR.

20          THE COURT:  OKAY.  YOU'RE RELEASED.  THANKS

21   FOR COMING IN.

22          THE WITNESS:  YOU'RE WELCOME.

23          (WITNESS EXCUSED.)

24          MR. IRWIN:  DEFENSE RESTS.

25          THE COURT:  OKAY.  WE'RE GOING TO TAKE -- I

"27"

4 OF MARCH       200 5

EDWARD McCLINTON  # 326905
Marion   Correctional   Institution
Post Office Box 158
Lowell, Florida 32663- 0158

OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
80 N. HUGHEY AVE.
ORLANDO, FLORIDA 32801

RE: UNSIGNED DOCUMENT

Dear M__. _____:

PLEASE BE ADVISED THAT THE FIRST DOCUMENT I SENT
YOU (CASE NO. 6:04-CV-1574-ORL-22JGG) WAS NOT SIGNED. HERE
ENCLOSED IS A SIGNED COPY.
                                    THANK YOU

Respectfully,

Edward McClinton