UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD McCLINTON,

    Petitioner,

v.                                            CASE NO. 3:05-cv-1305-J-32TEM

WALTER A. McNEIL, et al.,

    Respondents.
_____/

## SUPPLEMENTAL RESPONSE TO PETITION

COME NOW Respondents, Walter A. McNeil, et al., pursuant to this Court's Order of January 28, 2008 and hereby file this supplemental response to the petition addressing the merits of Ground 6, alleging as follows:

Petitioner ("McClinton") was charged with possession of a firearm by a convicted felon and possession of cannabis. He was convicted of both offenses after a jury trial and was sentenced as a habitual offender. In Ground 6 McClinton raises a "fundamental error" claim that the trial court omitted the word "knowingly" from the jury instruction on possession of a firearm. The State will respond to the merits of this issue.

## ARGUMENT ON THE MERITS

Defense counsel began his opening statement to the jury by saying that the passenger in the vehicle "...is going to testify that the handgun in question was actually his; that Mr. McClinton

was unaware of its presence in the car." (F 11)  Defense counsel ended his statement by saying that "[a]s to the firearm, I don't believe there's going to be any evidence or testimony which indicates Mr. McClinton knew of its presence or was in possession of it." (F 12)  Mr. Jackson, the passenger in the car, did indeed testify that the gun belonged to him and that McClinton was unaware of the gun.

In closing argument, the prosecutor discussed the anticipated jury instructions with the jury.  The prosecutor explained that first, the State must prove that McClinton was a convicted felon. "Second, after the conviction, Mr. McClinton knowingly owned or had in his care, custody, possession or control a firearm." (F 81) The prosecutor then focused upon the fact that one of the bullets for the gun was found in McClinton's pocket:

> Whether he likes it or not, it links him to the gun.  Why does he have a bullet in his pocket?  Why is the gun next to his leg?

(F 82)  The State was also able to emphasize the fact that the passenger in the vehicle, Bernard Jackson, was a ten-time convicted felon plus he had two other convictions for crimes of dishonesty. His testimony that McClinton was unaware of the gun was so incredible that it proved exactly the opposite – it must have been McClinton's gun.  Jackson's testimony revealed that he had no idea what kind or type of gun it was and claimed that it was "rolled up in [a paper] bag." (F 70-71)  He also never had any of the bullets

in his possession. (Id.) Jackson also revealed that he had been doing drugs for the 3 or 4 days immediately prior to the arrest. (F 64-66) He also admitted to growing up with McClinton and being his friend. (F 61-62) Lastly, despite being McClinton's friend, for nearly two years he never said anything to anyone regarding the fact that the gun belonged to him and they had charged the wrong man. (F 62-64)

Jackson's testimony that he found the gun and put it into McClinton's car without McClinton's knowledge was so unbelievable that it could only leave the jury with the impression that McClinton was in exclusive possession of the firearm. Jackson did not even know whether "his" gun was a revolver or semi-automatic. He had never seen any of the bullets for the loaded gun. (F 71) He certainly could not explain why McClinton had a bullet in his pocket which matched the ones in the loaded gun. Jackson also said his gun was in a paper bag but the State on rebuttal reaffirmed the fact that the gun was clearly not in a paper bag. (F 72-74) Jackson's claim that the gun belonged to him is ludicrous given the above evidence and the additional fact that he allegedly "found" it, and it was located in a vehicle registered to McClinton.

Clearly, the State's argument, first and foremost, is that McClinton has failed to prove prejudice. The evidence is sufficient to prove knowledge and the jury instructions adequately

described the elements of the crime. Specifically, with regard to joint possession, defense counsel explained in closing that

> If a person does not have exclusive possession of a thing, *knowledge* of its presence *cannot be inferred*. *Knowledge is an essential element in the case*. It can't just – it's not just a matter of how close was it. We don't measure possession by a yardstick and say, if it's within 15 inches, you got it; if it's 16, you don't. ***There's another element and that is knowledge. That's something that has to be proven***.

(F 90, emphasis supplied)  The jury was asked by the defense whether it was "...proven that he had knowledge?" (F 91)

The jury was indeed apparently instructed on possession of a forbidden firearm rather than possession of a firearm by a convicted felon. However, given the fact that McClinton stipulated that he was a convicted felon, the remaining element (possession) is essentially the same for both offenses. The instruction explained that where "a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed." (F 97-98) Therefore, it was necessary to convince the jury that McClinton knew of the weapon and exercised care, custody, and control of the firearm. The definitions given to the jury encompass knowledge of the firearm.

Omission of the word "knowingly" from the first part of the instruction falls far short of proving the prejudice required in

Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). McClinton must do far more than show he is entitled to a new trial; he must prove that the outcome of the proceeding would likely be different. Given the facts as outlined above, if the jury had believed Mr. Jackson (that McClinton was unaware of the gun) they would have acquitted McClinton. Obviously, they did not believe Jackson and consequently McClinton was the owner of the firearm. The evidence supports this verdict.

Unless there is a clear showing that the errors complained of were so gross or the trial was so fundamentally unfair, habeas corpus will not lie to set aside a conviction on the basis of improper instructions. See McDonald v. Sheriff of Palm Beach County, Florida, 422 F.2d 839 (5th Cir. 1970); Murphy v. Beto, 416 F.2d 98 (5th Cir. 1969); Gomez v. Beto, 402 F.2d 766 (5th Cir. 1968). In fact, to establish prejudice, McClinton must establish a reasonable probability that, absent the improper jury instruction, the jury would have acquitted him of the offense. There must be a "reasonable doubt respecting guilt". And the court must consider the totality of the evidence before the jury to determine prejudice. See Grady v. Yarborough, 150 Fed. Appx. 668, 669-670 (9th Cir. Cal. 2005).

Here, looking at the totality of the evidence, there is no reasonable doubt as to the guilt of McClinton. The "knowledge" element was proven by the fact that the only other person in the

vehicle had no knowledge of the type of gun or the bullets found in the weapon. And, ironically, he was ***trying*** to convince the jury it was his gun. Said passenger allegedly placed the gun in the car but was wrong about the type of container that held the weapon. And he waited nearly two years before mentioning that the firearm belonged to him. Plus he was also a ten-time convicted felon.

Errors in jury instructions do not state a claim for relief unless the error resulted in "prejudice of constitutional magnitude." See Sullivan v. Blackburn, 804 F.2d 885, 887 (5th Cir. 1986). The habeas petitioner must demonstrate that the error "had a substantial and injurious effect or influence on the determination of the jury's verdict." See Mayabb v. Johnson, 168 F.3d 863, 868 (5th Cir. 1999). In a habeas proceeding, the burden of demonstrating that an erroneous jury instruction violates the petitioner's Due Process rights is "greater than the showing required to establish plain error on direct appeal." See Henderson v. Kibbe, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 97 S. Ct. 1730 (1977).

The State also points out that the jury instruction in this case was adequate; the exercise of care, custody, or control requires the essential element of knowledge. This is especially true under the facts of this case, where the only other person who might have had such custody or control had no knowledge about the type of gun or its container. With the evidence presented at trial

the jury had a right to believe that McClinton, the person with one of the gun's bullets in his pocket, had knowledge, custody, and control of the firearm.  The jury also were within their right to reject outright the testimony of another convicted felon (Jackson) that he was the owner of the firearm and that McClinton was unaware of its presence.

## CONCLUSION

WHEREFORE, based upon the above, Respondents request that the petition be denied in its entirety.

Respectfully submitted,

BILL McCOLLUM
ATTORNEY GENERAL


/s/ Carmen F. Corrente
_____
CARMEN F. CORRENTE
ASSISTANT ATTORNEY GENERAL
Fla. Bar #304565
444 Seabreeze Boulevard
Fifth Floor
Daytona Beach, FL   32118
TEL (386) 238-4990
FAX (386) 238-4997

COUNSEL FOR RESPONDENTS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Supplemental Response to Petition for Writ of Habeas Corpus in case number 3:05-cv-1305-J-32TEM has been filed this date by using the CM/ECF system.  It has also been furnished by U.S. Mail to Edward McClinton, DOC # 326905, South Bay Correctional Facility, 5600 U.S. Highway 27 South, South Bay, FL  33493  this <u>15th</u> day of May, 2008.

/s/ Carmen F. Corrente

CARMEN F. CORRENTE
ASSISTANT ATTORNEY GENERAL