UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD MCCLINTON,

                Petitioner,

v.                                  Case No. 3:05-cv-1305-32TEM

WALTER A. MCNEIL,[1]
et al.,

                Respondents.

_____

**ORDER**[2]

**I. Status**

Petitioner Edward McClinton, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (hereinafter Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2001 state court (Orange County, Florida) judgment of conviction (for which he received a thirty year sentence) for possession of a firearm by a convicted felon on the following grounds: (1) the trial court erred in denying his motion for judgment of acquittal because the State failed to introduce the firearm's magazine and thereby failed to

_____

[1] Walter A. McNeil, the Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent having custody of the Petitioner.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

prove the firearm was operable; (2) ineffective assistance of trial
counsel for failure to file a motion to suppress the firearm based
on a lack of probable cause for the stop of the car; (3)
ineffective assistance of trial counsel for failure to raise the
issue that the State's evidence failed to establish constructive or
actual possession of a firearm by a convicted felon; (4)
ineffective assistance of trial counsel for counsel's failure to
timely object to Petitioner's being found to be a habitual
offender; (5) ineffective assistance of appellate counsel for
failure to raise the following issue on direct appeal: it was
fundamental error for the State to have failed to establish the
element of Petitioner's knowledge that the gun was in the car; and,
(6) ineffective assistance of appellate counsel for failure to
raise the following issue on direct appeal: the trial court
committed fundamental error by omitting the word "knowingly" from
the jury instruction.

Respondents filed a Response to Petition (Doc. #5)
(hereinafter Response) with exhibits in support of their Response.[3]
Petitioner was instructed on how to properly respond, and he has
responded.  See Court's Order (Doc. #7); Petitioner's Reply to
Response (hereinafter Reply) (Doc. #12); Petitioner's Appendix
(Doc. #13).  The Court Ordered Respondents to file a supplemental

---

[3] Respondents' exhibits will be hereinafter referred to as
"Ex."

2

response addressing the merits of ground six of the petition and Respondents have done so.  <u>See</u> Court's Order (Doc. #18); Respondents' Supplemental Response (Doc. #25) (hereinafter Supplemental Response).  Petitioner subsequently filed an Objection to Motion to Continue.  (Doc. #26).  This case is now ripe for review.

## II. Procedural History

In an Information, Petitioner was charged with possession of a firearm by a convicted felon (count one) and possession of twenty grams or less of cannabis (marijuana) (count two).  Ex. A, Information, filed June 29, 1998.  The Information was later amended changing the predicate felony for the firearm possession charge.  Ex. B, Amended Information, filed April 14, 1999.  On April 14, 1999, the State filed a Notice of Intention to Seek Enhanced Punishment based on Petitioner's being a habitual offender.  Ex. C.

On November 8, 1999, Petitioner was tried by a jury.  The jury found Petitioner guilty of possession of a firearm by a convicted felon (count one), as charged, and possession of marijuana (count two), as charged.  Ex. E, Verdicts.  The trial court adjudicated Petitioner guilty of both charges.  Ex. G.  The State presented Petitioner's prior record through judgments and sentencing documents.  Ex. H.  Petitioner was thereafter sentenced to thirty years of incarceration as a habitual felony offender for possession

3

of a firearm by a convicted felon and received 109 days of jail credit for 109 days served for the possession of marijuana. Ex. I; Ex. J.

On appeal, Petitioner's appellate counsel filed a brief in compliance with Anders v. California, 386 U.S. 738 (1967). Ex. L. On April 9, 2002, the appellate court per curiam affirmed without issuing a written opinion. McClinton v. State, 814 So.2d 1062 (Fla. 5th DCA 2002); Ex. M. The mandate was issued on April 26, 2002. Ex. N.

On or about November 13, 2002, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following claims: (1) counsel was ineffective for failure to raise the issue that the arrest and seizure were without probable cause; (2) counsel was ineffective for failure to raise the issue that the State's evidence failed to establish constructive or actual possession of the firearm by a convicted felon; and, (3) counsel was ineffective for failure to raise the issue that the habitualization procedure was improper and therefore constitutes an illegal sentence. Ex. O. On November 25, 2003, the court denied the motion for post conviction relief. Ex. P.

On appeal, Petitioner filed a *pro se* brief, raising the following claim: whether the trial court's failure to support its adverse ruling with record excerpts refuting Petitioner's second claim (concerning the State's failure to present a prima facie

case) was an abuse of discretion warranting a reversal.  Ex. R.  On March 9, 2004, the appellate court per curiam affirmed without issuing a written opinion.  <u>McClinton v. State</u>, 871 So.2d 896 (5th DCA 2004); Ex. S.  On or about March 17, 2004, Petitioner filed a motion for rehearing.  Ex. T.  On April 16, 2004, the court denied the motion for rehearing.  Ex. U.  The mandate was issued on May 5, 2004.  Ex. V.

On or about February 12, 2004, Petitioner filed a petition for writ of habeas corpus in the appellate court in which he claims ineffective assistance of appellate counsel for failure to raise on direct appeal the issues of lack of evidence of Petitioner's knowledge of the existence of the firearm and failure to raise the trial court's omission of the word "knowingly" from the oral instructions given to the jury on the issue of possession of a firearm.  Ex. W.  The State responded that the claims were without merit.  Ex. X.  Petitioner filed a reply.  Ex. Y.  On May 11, 2004, the appellate court, without opinion, denied the petition on the merits with prejudice.  Ex. Z.  Petitioner filed a motion for rehearing, which was denied on June 23, 2004.  Ex. AA; Ex. BB.

Petitioner's Petition in this Court is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 5-6.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. The pertinent facts of the case are fully developed in the record before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999). Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as

6

amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[4] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303.  The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146

---

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense

counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit recently stated:

The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. at 1314 n. 15 (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." Id. at 1315 n.16. We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Ineffective Assistance of Appellate Counsel

As noted previously, in Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court articulated a two-pronged test for determining whether a defendant was denied constitutionally adequate assistance of counsel. "The same standard applies whether [a court is] examining the performance of

10

counsel at the trial or appellate level." Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)).

To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687. "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Eagle, 279 F.3d at 940 (quoting Strickland, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" Id. (quoting Strickland, 466 U.S. at 689). The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. Chateloin v. Singletary, 89 F.3d 749, 753 (11th Cir. 1996); see also Jones v. United States, 224 F.3d 1251, 1257-58 (11th Cir. 2000) (noting that counsel's "failure to divine" a change in unsettled law did not constitute ineffective assistance of appellate counsel) (quoting Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir. 1983)).

To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

### VII. Findings of Fact and Conclusions of Law

#### A. Ground One

As ground one, Petitioner claims the trial court erred in denying his motion for judgment of acquittal because the State failed to introduce the firearm's magazine and thereby failed to prove the firearm was operable. Petitioner claims that he raised this ground on direct appeal. Petition at 5; Reply at 7. Respondents contend that Petitioner failed to raise this issue on direct appeal. Response at 7. While appellate counsel filed an Anders brief, this was one of the issues noted as having been raised at trial. Ex. L at 10. Though not without doubt, the Court assumes arguendo that Petitioner has sufficiently exhausted this

issue.  The appellate court per curiam affirmed without issuing a written opinion.  McClinton, 814 So.2d 1062; Ex. M.

The following testimony was adduced at the trial.  On January 6, 1998, at 10:45 p.m., Officer Gibson saw a gold Buick in the parking lot and immediately noticed "the smell of marijuana or cannabis just pouring out of the car."  Ex. F, Transcript of the Jury Trial Conducted November 8, 1999 (hereinafter Tr.) at 16. Officer Gibson shone his light into the car and saw the passenger (Petitioner's co-defendant, Bernard Jackson) take what he was smoking and place it into the ashtray.  Id. at 17.  Petitioner McClinton was the driver of the car.  Id. at 17, 31.  When Petitioner McClinton opened the door to step out of the car, the marijuana smell "just rolled out of the car."  Id. at 18.  Upon searching Petitioner with his consent, Officer Gibson found plastic baggies of cannabis in Petitioner's left rear pocket.  Id.  Upon further search, Officer Gibson found a luger 9 millimeter bullet in Petitioner's front left pocket.  Id. at 23-24.

After handcuffing and securing Petitioner inside the patrol car, Officer Gibson went to assist Officer Schaeffer.  Id. at 24. While the passenger door was open, Officer Gibson looked inside the car and saw a firearm inside a black knit cap that was sitting in the middle of the front bench seat where Petitioner and co-defendant

Jackson had been sitting.[5]   <u>Id</u>.   The cap was within an arm's reach (six to ten inches) of where Petitioner had been sitting in the car and within inches of his right knee.   <u>Id</u>. at 25, 31.   The firearm had one bullet in the chamber and a magazine with eight bullets inside the magazine.   <u>Id</u>. at 27-28.   Officer Schaeffer pulled the magazine out and cleared the firearm of the one round found inside the chamber.   <u>Id</u>.   Officer Gibson pulled the bullets out of the magazine and noticed that several of them were also luger 9 millimeter rounds, "just like the one [he] had taken out of the defendant's pocket a couple minutes earlier."   <u>Id</u>. at 28.

On cross-examination, defense counsel inquired about the firearm's magazine.

> Q. To your knowledge, this particular firearm wouldn't be operable without a magazine in it; is that fair to say?
>
> A. That's not necessarily true.  Some pistols or semiautomatics do not have to have the magazine inside to fire a round.
>
> Q. Okay.
>
> A. For example, a glock you can take -- that is a manufacturer.  You can take the magazine out and pull the trigger.  With a round in the chamber it will shoot.
>
> Q. This particular gun, would it be operable without a magazine?

---

[5] Officer Schaeffer saw the handle part of the firearm barely sticking out from underneath the nylon stocking cap that was sitting "more toward the front part" of the front bench seat.  Tr. at 43.

              A. I don't know.

Id. at 32.  Officer Gibson noted, on cross-examination, that after

the co-defendant's case had concluded, the following items were

destroyed: the cap that had contained the firearm; the nine bullets

that came out of the firearm; the one bullet that Officer Gibson

took out of Petitioner's pocket; and, the magazine from the firearm.

Id. at 32-33.  On re-direct examination, Officer Gibson confirmed

that he found the firearm with the magazine and the bullets in it.

Id. at 34.

      The firearms expert testified that she tested the firearm, and

it qualified as a firearm.  Id. at 53-54.  She further noted that

the firearm requires a magazine in order to fire it.  Id. at 54-55.

      The parties stipulated that Petitioner McClinton has previously

been convicted of a felony and therefore that fact was considered

proven by the State beyond a reasonable doubt.  Id. at 56.  After

the State rested, defense counsel moved for a judgment of acquittal

and stated:

              As to the firearm charge, Judge, we do not
              have a magazine in evidence.  The firearm
              expert has testified that this particular
              firearm is not capable, is not operable without
              a magazine.  Without that magazine being in
              evidence, I don't believe the State has proven,
              in the light most favorable to the State, that
              this is a weapon that is operable.

Id. at 57.  The State opposed the motion, stating that the officer

on the scene had testified that bullets were in the firearm at the

time he found the firearm. Id. at 58. The trial judge denied the motion for judgment of acquittal.[6] Id.

Defense counsel called one witness: co-defendant Bernard Jackson who testified that he put the firearm inside the car. Id. at 60. He further confirmed that he did not show Petitioner the firearm, he did not tell Petitioner that he placed the firearm in the car and he did not converse with Petitioner about the firearm. Id. He noted that Petitioner never said anything to him to indicate to him that Petitioner had seen the firearm or knew that the firearm was in the car. Id.

Here, Petitioner now urges this Court to find that the trial court erred in denying counsel's motion for judgment of acquittal. The trial court's denial of a motion for judgment of acquittal ordinarily presents a state law claim, not a claim of constitutional dimension. It would only be a claim of constitutional dimension to the extent that Petitioner claims there was insufficient evidence to support his conviction and there was a violation of due process of law as a result of this deficiency.

As previously stated, the appellate court per curiam affirmed without issuing a written opinion. McClinton, 814 So.2d 1062; Ex. M. Accordingly, this trial court error claim was rejected on the

---

[6] The trial court properly denied the motion for judgment of acquittal, and the appellate court properly affirmed the decision of the trial court. There was sufficient evidence for the trial court to deny the motion for judgment of acquittal and submit the case to the jury for resolution of the facts.

merits by the state appellate court.  Thus, there is a qualifying state court decision.[7]  This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## B. Ground Two

As ground two, Petitioner claims that defense counsel was ineffective for failing to raise the issue that the arrest and seizure were without probable cause.  Specifically, he asserts that counsel failed to file a motion to suppress the firearm based on a lack of probable cause for the stop of the car.  Petitioner raised this claim, as ground one, in his Rule 3.850 motion.  Ex. O at 7.  Respondents contend that Petitioner failed to include this claim in the appeal of the Rule 3.850 and therefore did not sufficiently

---

[7] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d at 1255.

exhaust the issue.  Response at 7.  However, under Florida law, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no appellate briefs are required.  <u>See</u> Fla. R. App. P. 9.141(b)(2)(C).  Therefore, "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 Fed. Appx. 982, 984 (11th Cir. 2007) (not selected for publication in the Federal Reporter) (citation omitted).  Thus, Petitioner has sufficiently exhausted the claim.

As previously noted, Petitioner raised the claim in his Rule 3.850 motion, and the trial court adjudicated this claim on the merits.  In denying this claim, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> Defendant alleges that counsel was ineffective for failing to raise the issue that Defendant's arrest and seizure were illegal.  Defendant argues that the arresting officer did not have a reasonable suspicion of criminal activity based merely on the odor of cannabis coming from Defendant's vehicle.  Defendant is incorrect.  "A person who is trained to recognize the odor of marijuana and who is familiar with it and can recognize it has probable cause based on the smell alone, to search a person or a vehicle for contraband." *State v. T.T.*, 594 So.2d 839, 840 (Fla. 5th DCA 1992).  Hence, there was no basis on which counsel should have argued that the seizure was illegal, and no relief is warranted.

Ex. P at 1-2.

18

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the _Strickland_ ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." _Strickland_, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" _Rompilla v. Beard_, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action

that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, the record reflects that Officer Gibson and Officer Schaeffer immediately noticed the smell of marijuana or cannabis "pouring out of the car."  Tr. at 16, 18, 40. Both officers had received specialized training in the field of narcotics investigation and had been involved in a multitude of illegal drug cases.  Id. at 16-17, 39.  Counsel's failure to file a motion to suppress the firearm based on a lack of probable cause for the stop of the car was not deficient performance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

### C. Ground Three

As ground three, Petitioner claims that counsel was ineffective for failure to raise the issue that the State's evidence failed to establish constructive or actual possession of a firearm by a convicted felon.  Petitioner raised this claim, as ground two, in his Rule 3.850 motion.  Ex. O at 7.  The trial court adjudicated this claim on the merits.  In denying this claim, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

20

Defendant argues that counsel was ineffective for failing to challenge the sufficiency of the State's evidence regarding Defendant's possession of the firearm. However, the trial transcript refutes Defendant's allegations. Defense counsel argued in opening statement that Defendant had no knowledge of the presence of the gun. (See attached Trial Transcript [TT], P. 11). In fact, counsel presented Bernard Jackson as a defense witness to verify that Defendant had no knowledge of the presence of the gun. (See attached TT, Pp. 59-61). It was then for the jury, as the finder of fact, to determine whether Defendant knew of the gun. Hence, counsel's representation was effective, and this claim is without merit.

Ex. P at 2.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Here, counsel challenged the sufficiency of the State's evidence regarding Petitioner's possession of the firearm. Specifically, in the opening statement, defense counsel stated:

> Ladies and gentlemen, you're going to hear also from Bernard Jackson, who was the passenger in the vehicle, and Mr. Jackson is going to testify that the handgun in question was actually his; that Mr. McClinton was unaware of its presence in the car.
>
> . . . .
>
> You are not going to hear any evidence of fingerprints as to fingerprints recovered from the gun. You are not going to hear that this firearm was in Mr. McClinton's possession.
>
> . . . .
>
> As to the firearm, I don't believe there's going to be any evidence or testimony which indicates Mr. McClinton knew of its presence or was in possession of it. Thank you.

Tr. at 11-12.

Further, during the cross-examination of Officer Gibson, counsel elicited testimony from Officer Gibson that the firearm was not seen from the driver's side of the car, but was only viewed from the passenger's side of the car. Id. at 33. Defense counsel called one witness: Petitioner's co-defendant, Bernard Jackson, who testified that he placed the gun in the car. Id. at 60. Jackson further confirmed that he did not show Petitioner the firearm, he did not tell Petitioner that he placed the firearm in the car and he did not converse with Petitioner about the firearm. Id. He claimed that Petitioner never said anything to him to indicate to

22

him that Petitioner had seen the firearm or knew that the firearm was in the car.  Id.  Finally, in closing argument, counsel again reminded the jury that it should concentrate on whether Petitioner McClinton had possession of the firearm.  Id. at 87-93.  There was no deficient performance.

### D. Ground Four

As ground four, Petitioner claims counsel was ineffective for failure to timely object to Petitioner's being found to be a habitual offender.  Petitioner raised this claim, as ground three, in his Rule 3.850 motion.  Ex. O at 7-8.  The trial court adjudicated this claim on the merits.  In denying this claim, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> Defendant contends that counsel was ineffective for failing to object to Defendant's illegal habitual offender sentence.  Section 775.084, Florida Statutes (1997), requires that:
>
> 1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses.
>
> 2. The felony for which the defendant is to be sentenced was committed:
> a. While the defendant was serving a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, or
>
> b. Within 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of the

23

defendant's release from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later.

3. The felony for which the defendant is to be sentenced, and one of the two prior felony convictions, is not a violation of s. 893.13 relating to the purchase or the possession of a controlled substance.

4. The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this paragraph.

5. A conviction of a felony or other qualified offense necessary to the operation of this paragraph has not been set aside in any postconviction proceeding.

Defendant claims there was no evidence that his prior release from custody was within five years of the instant offense, January 6, 1998. (See attached Information). He also contends that all the prior charges were drug charges, and none of them qualified him as a habitual offender. However, the record establishes that the State entered into the record two certified sentences establishing that Defendant had been released from custody within five years of the instant offense. (See attached certified orders). These orders also establish that Defendant was convicted of aggravated battery, a violent offense, contrary to Defendant's contentions that his prior offenses were all only possession charges. Accordingly, Defendant was properly designated a habitual offender, and counsel need not have objected.

Ex. P at 2-3.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### E.  Ground Six

As ground six, Petitioner claims that appellate counsel was ineffective for failure to raise the following issue on direct appeal: the trial court committed fundamental error by omitting the word "knowingly" from the felon in possession jury instruction. Respondents contend that Petitioner did not adequately address this claim as an ineffectiveness claim (Response at 7-9); however, this Court concludes that Petitioner has sufficiently exhausted the issue.  This ground was sufficiently raised in Petitioner's state petition for writ of habeas corpus.  Ex. W.  The State responded

25

that the claim was without merit, and Petitioner filed a reply.  Ex. X; Ex. Y.  The appellate court denied the petition on the merits with prejudice.  Ex. Z.  Petitioner's motion for rehearing was denied.  Ex. AA; Ex. BB.

Accordingly, this ineffectiveness claim was rejected on the merits by the state appellate court.  Thus, there is a qualifying state court decision.  The Court will address the issues presented by this claim as follows: (1) Did the trial court err in failing to instruct the jury regarding an essential element of the charged offense; if so, (2) Was appellate counsel constitutionally ineffective for failing to raise this claim on direct appeal; if so, (3) Can this Court correct the error and issue the writ pursuant to AEDPA's rigorous standard of deference?

### i.  The state court committed reversible error by omitting the word "knowingly" from the jury instructions

The first step in examining Petitioner's claim is to determine whether reversible trial error occurred.  Respondent now concedes that "[t]he jury was indeed apparently instructed on possession of a forbidden firearm rather than possession of a firearm by a convicted felon."  Supplemental Response at 4.  A comparison of the two instructions shows that, while they are somewhat similar, the jury instructions on possession of a forbidden firearm do not require that the offense be committed "knowingly."  The Florida pattern jury instructions for "Possession of a Forbidden Firearm" read as follows:

To prove the crime of (crime charged) the State must prove the following two elements beyond a reasonable doubt:

1. (Defendant) [owned] [had in his care, custody, possession, or control] a (firearm alleged).

2. The (firearm alleged) was one that was, or could readily be made, operable.

Fla. Std. Jury Instr. (Crim.) 10.14. In comparison, the Florida pattern jury instructions for "Felons Possessing Weapons" read as follows:

To prove the crime of (crime charged), the State must prove the following two elements beyond a reasonable doubt:

1. (Defendant) had been convicted of (prior offense).

2. After the conviction (defendant) <u>knowingly</u>
*Give 2a or 2b as applicable*

a. [owned] [had in [his] [her] care, custody, possession or control]

[a firearm].

[an electric weapon or device].

b. [carried a (weapon alleged), which was concealed from the ordinary sight of another person].

Fla. Std. Jury. Instr. (Crim.) 10.15 (emphasis added). The trial judge, reading from the wrong jury instruction, failed to instruct the jury that the defendant had to "knowingly" possess the firearm.[8]

_____

[8] The pertinent instructions given by the judge were as follows:

Before you can find the defendant guilty of possession of

27

Respondents assert that the instructions were nevertheless sufficient because other pattern language in the instruction discussing possession referenced the word "knowledge." Apparently, or so the argument goes, this reference somehow cured the defect in the substantive elements of the jury charge. Florida courts disagree. See White v. State, 539 So.2d 577, 578 (Fla. 5th DCA 1989). In White, the Fifth District Court of Appeal reversed the defendant's felon in possession conviction because the standard jury instruction for the crime at that time did not encompass the knowledge requirement. See id. ("[I]n order to prove possession of a firearm, there must be evidence to support a finding that the defendant had knowledge of the presence of the gun and the ability to exercise control over it.")(internal citation omitted). In 1992, in response to the decision in White, the Florida Supreme Court amended that jury instruction to specifically include the word "knowingly." See Standard Jury Instructions-Criminal Cases, No. 92-1, 603 So.2d 1175, A-42 (Fla. 1992). Significantly, the language

---

a firearm by a convicted felon the state must prove the following elements:

One, that Edward McClinton had in his custody, care, possession or control a handgun.

Two, that the handgun was one that was, or could readily be made, operable.

Tr. at 96; Ex. D at 1. This instruction is titled "Possession of Forbidden Firearms" in the written jury instructions. Ex. D at 1.

28

that Respondents now claim is sufficient in this case to cure the
defective jury instruction was present in both the pre-1992
instruction found deficient in _White_ and the post-1992 instruction.

_White_ does not stand alone. Courts in Florida have
consistently held that omission of the knowledge requirement in
felon in possession jury instructions is reversible error. _See
Creamer v. State_, 605 So.2d 541, 542 (Fla. 1st DCA 1992) (reversing
felon in possession conviction and remanding for new trial where
trial court did not instruct jury as to knowledge requirement);
_Jones v. State_, 596 So.2d 1221, 1222 (Fla. 5th DCA 1992) (same); _see
also Johnson v. State_, 890 So.2d 432, 433 (Fla. 4th DCA 2004)
(reversing denial of state habeas petition and remanding for further
proceedings to determine whether jury was instructed as to the
knowledge requirement in felon in possession case). Accordingly,
the state court committed error by not instructing the jury on the
knowledge requirement of the felon in possession crime.

## ii. Petitioner's appellate counsel was constitutionally ineffective for failing to raise the jury instruction issue on direct appeal

Petitioner's collateral attack of the erroneous jury
instruction is based on ineffective assistance of appellate
counsel.[9] As discussed previously, Petitioner must satisfy a two-
pronged test to establish his ineffective assistance of counsel

---

[9] For some reason, perhaps because of his _pro se_ status,
Petitioner did not make this argument as an ineffectiveness claim
as to _trial counsel_.

claim: (1) that appellate counsel's performance was constitutionally deficient; and (2) that Petitioner was prejudiced by his attorney's error. See Strickland, 466 U.S. at 689.

Petitioner has satisfied the first prong in this case. Normally, it is difficult to fault appellate counsel for raising some issues and not others. "[E]ffective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." See Heath v. Jones 941 F.2d 1126, 1130-31 (11th Cir. 1991) (citing Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). However, this is not what happened here because Petitioner's lawyer did not raise any arguments; he filed an Anders brief. Ex. L.[10] "With a claim that counsel erroneously failed to file a merits brief, it will be easier for a defendant-appellant to satisfy the first part of the Strickland test, for it is only necessary for him to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief . . . ." Smith v. Robbins, 528 U.S. 259, 288 (2000). The Court finds that a "reasonably competent attorney" would have appealed the fact that the trial court read the wrong substantive jury instruction and

---

[10] Appellate counsel's brief states that it was "submitted in partial fulfillment of the requirements of Anders . . ." Ex. L. at 9. While the brief stated that there was an "issue" of "whether the trial court erred in denying appellant's motion for judgment of acquittal," id at 10, a full examination of the brief shows that, consistent with an Anders brief, counsel dispassionately discussed the history and issues of the case but did not allege any error. Counsel then asked for leave to withdraw from further representation in the appeal. Id. at 15.

omitted a key element from that instruction.[11]   Therefore, the "performance" prong is satisfied.

Accordingly the Court turns to the question of prejudice. Ordinarily, the standard for showing prejudice pursuant to Strickland in these circumstances is that, "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." Smith, 528 U.S. at 286. However, Petitioner faces an additional hurdle to establishing prejudice in this case because trial counsel failed to properly preserve the jury instruction issue with a contemporaneous objection at trial. Accordingly, Petitioner must show that, but for appellate counsel's error, the result would have been different even under the strict "fundamental error" standard.

Like its federal cousin, the "plain error" rule, the Florida "fundamental error" rule is quite demanding. "[I]n order to be of such fundamental nature as to justify a reversal in the absence of a timely objection the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960). This type of error only occurs "when the omission is pertinent or material to what the jury must consider in order to convict." Steward v. State, 420

---

[11] This is true even though no one at trial, including Petitioner's counsel, caught the error.

31

So.2d 862, 863 (Fla. 1982).   "An error in a jury instruction constitutes fundamental error if it concerns the total failure to instruct the jury on an essential element of the crime and that element is disputed at trial." Wiley v. State, 830 So.2d 889, 890 (Fla. 1st DCA 2002) (citing State v. Delva, 575 So.2d 643 (Fla. 1991)).

As discussed earlier, the "knowledge" requirement of the jury instruction here was an essential element of the crime.   After an examination of the parties' briefs and the trial transcript, the Court has concluded that the missing element in the jury instructions was the central disputed issue in this case. See infra pp. 35-40.   Accordingly, the trial court's failure to accurately instruct the jury was a fundamental error; but for appellate counsel's failure to raise it, in all likelihood Petitioner's conviction would have been reversed.

### iii. The state court's decision was contrary to, or an unreasonable application of, clearly established federal law

The above discussion shows that, in denying Petitioner relief on his ineffective assistance of appellate counsel claim, the state court erred.   However, that fact alone is not enough for Petitioner to be granted relief at the federal level on habeas review.   "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.   Rather, that application must also be unreasonable."

<u>Williams</u>, 529 U.S. at 413.   Here, in issuing a per curiam affirmance, the state court did not set out its reasoning on either the "performance" or the "prejudice" prong of Petitioner's claim. Accordingly, both prongs must be analyzed under the AEDPA standard.

The Court finds it unlikely that the state court decision rested on the "performance" prong of <u>Strickland</u>.   If it did, that decision was unreasonable.   As discussed above, appellate counsel filed an <u>Anders</u> brief.   Clearly established federal law holds that appellate counsel is constitutionally ineffective if "a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief."   <u>See</u> <u>Smith</u>, 528 U.S. at 288.   As discussed earlier, <u>supra</u> p. 31-32, there is no doubt that appellate counsel's performance was deficient.   Accordingly, the Court will turn to the issue of prejudice.

Clearly established federal law, as established by the holdings of the United States Supreme Court, shows Petitioner is entitled to relief on this claim.   The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   <u>In re Winship</u>, 397 U.S. 358, 364 (1970).   "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."   <u>United States v. Gaudin</u>, 515 U.S. 506, 522-23 (1995).   The omission of the

"knowledge" requirement from the felon in possession jury instructions eliminated the requirement that the jury find that essential element of the crime.   In doing so, the trial court committed constitutional error and deprived Petitioner of due process.   Appellate counsel's failure to raise this issue on direct appeal prejudiced Petitioner.   Therefore, if the state court decision rested on the "prejudice" prong of <u>Strickland</u>, that decision was unreasonable.

However, a final hurdle must be addressed before the writ can issue; the constitutional error must have had a "substantial and injurious effect" on the outcome of the proceedings.   <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>California v. Roy</u>, 519 U.S. 2, 4-5 (1996).   Here, the failure of counsel to raise the jury instruction error on appeal meets this test.   This is because, but for the failure to raise that issue, Petitioner's conviction would have been vacated on direct appeal.

Nevertheless, the <u>Brecht</u> standard speaks to trial errors; in an abundance of caution, the Court will analyze the trial error in this case under that standard. The Court's analysis is informed by a full understanding of how difficult it is to provide a federal habeas remedy for this type of error.   The appropriate question on habeas review of erroneous state court jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Estelle v. McGuire</u>,

34

502 U.S. 62, 72 (1991).  The defective instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

After a thorough review of the trial transcript, the Court concludes that the trial court's error had a substantial and injurious effect on the verdict.  This felon in possession case was centered upon whether Petitioner knew that the firearm was in the car.  At trial, only two parts of the State's case were contested. The first was whether the firearm found in the car was an operable firearm.  This argument was based on the mistaken destruction of some of the State's evidence before trial.  Tr. at 88-89.  The only other contested issue was the "knowledge" element of the crime. This is supported by numerous statements throughout the opening and closing arguments of both the State and the defense.  See e.g. id. at 11 ("Mr. Jackson is going to testify that the handgun in question was actually his; that Mr. McClinton was unaware of its presence in the car"); id. at 12 ("As to the firearm, I don't believe there's going to be any evidence or testimony which indicates Mr. McClinton knew of its presence or was in possession of it"); id. at 92 ("[t]he first officer that testified, said you could not see that firearm from the driver's side.  You could see it from the passenger side. Why is that important?  Well, it goes directly to knowledge.  Has it been proven that he had knowledge?  Did he have knowledge of this

firearm?"); id. at 91 ("What I want you to spend your time on is the firearm.   That's the crucial issue in this case is did he have knowledge of it, did he have possession of it, and was it an inoperable firearm").

Additionally, the defense presented evidence of its own; the sole witness, Bernard Jackson, was offered to cast doubt on whether Petitioner had knowledge of the presence of the gun.   The relevant part of Mr. Jackson's testimony is as follows:

> Q.  Do you recall [the police] finding a handgun on the inside of that vehicle?
>
> A.  Yes.
>
> Q.  Do you recall where that handgun was?
>
> A.   In between the seat where me and Mr. McClinton was sitting at.
>
> Q.  Okay.  Was it wrapped up inside anything?
>
> A.  A hat was over the top of the gun.
>
> Q.  Okay.  How did that firearm get inside the car?
>
> A.  I put it there.
>
> Q.  Okay.  And did Mr. McClinton know of that firearm? Was he aware it was there?
>
> A.  Not at the time.
>     Mr. Berger: Objection.  This calls for speculation.
>     The Court: Sustained.
>     By Mr. Irwin:
>
> Q.  Did you show Mr. McClinton that gun and say, here's a firearm, I'm placing it in this car?
>
> A.  Not at the time.

Q.  Did you ever have any conversation with him about the firearm, letting him know that it was there in the car?

A.  No.

Q.  Did he ever say anything to you indicating that he saw the firearm or knew that it was there?

A.  No.

Id. at 59-60.  Respondents point out that Mr. Jackson had ten felony convictions and two misdemeanor crimes of dishonesty as indicative of his lack of credibility.  Nevertheless, issues of credibility are for the jury to determine.  By introducing this testimony, the defense made plain its strategy of contesting not the presence of the firearm, but McClinton's knowledge of that presence.  By omitting the knowledge element, the jury instructions eliminated the requirement that the jury find beyond a reasonable doubt that Petitioner "knowingly" possessed the firearm.[12]

In providing a Supplemental Response to the petition addressing these issues, Respondents focus on the strength of the State's case as to the "knowledge" element and the weakness of the defense witness who testified squarely on that element.  Respondents assert that "[t]he 'knowledge' element was proven by the fact that the only

---

[12] The Florida pattern jury instructions apparently do not further define "knowingly."  However, in <u>White</u>, the court explained the need for the knowledge instruction, saying that without it, "there is nothing in the instructions as given which suggests that conscious possession of the firearm by [defendant] was required." <u>White</u>, 579 So.2d at 579.  <u>White</u> further explains that omitting the knowledge element from the felon in possession jury instruction "permits conviction without any culpable mental state, contrary to established Florida law."  <u>Id</u>.

other person in the vehicle had no knowledge of the type of gun or the bullets found in the weapon."   Supplemental Response at 5-6. Respondents' argument proves too much.   By focusing on the centrality of whether Petitioner "knowingly" possessed the gun, Respondents have established that the error in the jury instructions struck to the very heart of the case.   The transcript shows that both the prosecutor and defense counsel fully expected the judge to instruct the jury that Petitioner had to have "knowingly" possessed the firearm.   See Tr. at 81 (argument of prosecutor) ("Second, after the conviction, Mr. McClinton knowingly owned or had in his care, custody, possession or control a firearm."); id. at 90 (argument of defense counsel) ("Knowledge is an essential element of this case. It can't just – it's not just a matter of how close was it.   We don't measure possession by a yardstick and say, if it's within 15 inches, you got it; if it's 16, you don't.   There's another element and that is knowledge.   That is something that has to be proven."). The lawyers structured their cases and closing arguments around that expectation, focusing on an element that the judge then never discussed with the jury, to the prejudice of the Petitioner.   See e.g. id. at 92-93 (argument of defense counsel) ("I believe, after you've gone through the instructions, and I can't emphasize how

important those are, you need to look at them and go through them
and really apply them to the facts of this case.").[13]

That the "knowledge" element was seriously contested at trial
distinguishes this case from countless others where a mistake or
omission in the jury instructions is harmless error due to the issue
either not being contested or cured by the instructions as a whole.
See e.g., Neder v. United States, 527 U.S. 1, 16-17 (1999) (failure
of trial court to instruct on materiality element of tax fraud case
because evidence of materiality at trial was uncontroverted and

---

[13] As stated earlier, there were two references to "knowledge"
in the jury instructions:

> If a person has exclusive possession of a thing,
> knowledge of its presence may be inferred or assumed.

> If a person does not have exclusive possession of a
> thing, knowledge of its presence may not be inferred or
> assumed.

Tr. at 97-98; Ex. D at 2. The Court has carefully analyzed
whether, considering the instructions "as a whole," this was
sufficient to cure the omission of the "knowingly" instruction.
The Court concludes that it was not because in both the oral and
written instructions given to the jury, the jury was advised that
it need find only two elements to convict the petitioner:

> Edward McClinton had in his care, custody, possession or
> control a handgun.

> The handgun was one that was, or could readily be made,
> operable.

Tr. at 96; Ex. D at 1. There is no reference to "knowledge" in
this recitation. That later in the instructions, in another
context, the word knowledge is used does not alter the fact that
the jury was allowed to convict without finding that Petitioner
"knowingly" possessed the firearm. See also supra pp. 28-29.

overwhelming); <u>Hardaway v. Winthrow</u>, 305 F.3d 558, 565 (6th Cir. 2002) (failure of trial court to instruct jury that killing must be done without justification or excuse cured by adequate self-defense instruction); <u>Singh v. Kane</u>, No. CIV S-04-2120 DFL JFM P., 2006 WL 3028406, *7 (E.D. Cal. Oct. 24, 2006) (omission of knowledge requirement of crime cured by the inclusion of knowledge requirement in other counts).   Whether Petitioner "knowingly" possessed the firearm was not just a small or uncontested part of the case, it was virtually the entire case.   And, while a defendant cannot require technical perfection in jury instructions, he can expect that the jury will be properly instructed on the very elements of the crime. The Court is left with the firm conclusion that omission of the knowledge element from the jury instructions in this case, which element was contested through argument and evidence at trial, had a substantial and injurious effect on the outcome of the trial.[14] When appellate counsel failed to raise this issue he was constitutionally ineffective, even according the state court the AEDPA deference to which it is entitled.   Accordingly, the writ is

---

[14] Petitioner raised a related argument as ground five–that appellate counsel was ineffective for failing to argue that the State failed to establish the element of Petitioner's knowledge that the gun was in the car.  Despite the Court's finding on ground six, this argument is without merit because Petitioner cannot show prejudice as to appellate counsel's performance on ground five. The constitutional violation at trial, which appellate counsel should have raised on appeal, was the failure to instruct the jury on the knowledge element.  If that had been done, the evidence at trial of Petitioner's knowledge was sufficient to support conviction.

due to be conditionally granted on ground six.[15]   Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **CONDITIONALLY GRANTED** as to ground six only, conditioned on Petitioner's being permitted a new direct appeal in the Florida courts with the effective assistance of counsel, which direct appeal must be initiated within ninety (90) days (of course, the State could also agree to pretermit the appeal and offer Petitioner a new trial).   The Petition is otherwise **DENIED**.

2.   No later than **December 18, 2008**, Respondents shall advise the Court of its compliance with this Order.

3.   The Clerk should close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2008.

Timothy J. Corrigan

TIMOTHY J. CORRIGAN
United States District Judge

c:
Edward McClinton
Ass't Attorney General (Wilson)

---

[15] Because the writ is due to be granted on ground six only, which alleged ineffective assistance of appellate counsel, Petitioner is not entitled to a new trial, but a new direct appeal with constitutionally adequate counsel. See Matire, 811 F.2d at 1439.